# No. 24-1120

IN THE

# United States Court of Appeals

FOR THE FOURTH CIRCUIT

▶▶◀◀

CPI SECURITY SYSTEMS, INC.

*Plaintiff-Appellee*,

v.

VIVINT SMART HOME, INC., F/K/A MOSAIC ACQUISITION CORP.;
LEGACY VIVINT SMART HOME, INC., F/K/A VIVINT SMART HOME, INC.

*Defendants-Appellants*.

_____

*On Appeal From The United States District Court
For The Western District of North Carolina
Honorable Max O. Cogburn, Jr.
No. 3:20-cv-504*

## PETITION FOR REHEARING OR, IN THE ALTERNATIVE, REHEARING EN BANC

Alex Bergjans
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Rachel E. Epstein
Ellyde R. Thompson
Daily Guerrero Chen
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, NY 10016
(212) 849-7000

*Counsel for Defendants-Appellants*

August 5, 2025

## **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

TABLE OF CONTENTS ............................................................................. I

TABLE OF AUTHORITIES ...................................................................... II

INTRODUCTION AND STATEMENT OF PURPOSE .......................................... 1

I.    PANEL REHEARING OR REHEARING EN BANC IS WARRANTED AS TO THE PANEL'S UNPRECEDENTED INTERPRETATION OF NORTH CAROLINA'S PUNITIVE DAMAGES CAP ........................................................................ 6

II.   PANEL REHEARING OR REHEARING EN BANC SHOULD BE GRANTED BECAUSE THE PANEL'S UDTPA HOLDING IS CONTRARY TO BOTH NORTH CAROLINA AND CIRCUIT LAW ..................................................................................... 14

CONCLUSION ........................................................................................ 17

CERTIFICATE OF COMPLIANCE ............................................................. 19

CERTIFICATE OF SERVICE ..................................................................... 20

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Bumpers v. Cmty. Bank of N. Virginia*,
  747 S.E.2d 220 (N.C. 2013)..........................................3, 14, 15, 16, 17

*D C Custom Freight v. Tammy A. Ross & Assocs.*,
  848 S.E.2d 552 (N.C. Ct. App. 2020)......................................3, 4, 14, 15, 16, 17

*Ellis v. Smith-Broadhurst, Inc.*,
  268 S.E.2d 271 (N.C. Ct. App. 1980) ..............................................15

*Freudeman v. Landing of Canton*,
  702 F.3d 318 (6th Cir. 2012) ...............................................9, 11

*Matter of L.L.*,
  909 S.E.2d 151 (N.C. 2024)..................................................1, 8

*Newton v. Standard Fire Ins. Co.*,
  229 S.E.2d 297 (N.C. 1976).................................................9

*Priv. Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*,
  296 F.3d 308 (4th Cir. 2002) .............................................16

*Rhyne v. K-Mart Corp.*,
  562 S.E.2d 82 (N.C. Ct. App. 2002)......................................10, 11

*Rhyne v. K-Mart Corp.*,
  594 S.E.2d 1 (N.C. 2004).....................................................9, 10, 13

*Roginski v. Shelly Co.*,
  31 N.E.3d 724 (Ohio C.P. 2014) ...........................................11, 12, 13

*SouthWood v. CCDN, LLC* ,
  2016 WL 1389596 (E.D.N.C. Apr. 7, 2016) ..................................10

*Techna-Fit, Inc. v. Fluid Transfer Prods., Inc.*,
  45 N.E.3d 399 (Ind. Ct. App. 2015) ......................................11, 12, 13

ii

*Town of Nags Head v. Toloczko*,
  728 F.3d 391 (4th Cir. 2013) ................................................................4

*United States v. Little*,
  52 F.3d 495 (4th Cir. 1995) .........................................................16, 17

*West v. Am. Tel. & Tel. Co.*,
  311 U.S. 223 (1940)......................................................................16, 17

*X-It Prods., LLC v. Walter Kidde Portable Equip., Inc.*,
  227 F. Supp. 2d 494 (E.D. Va. 2002) .................................................10

STATUTES

Ala. Code § 6-11-21 ..................................................................................2

Alaska Stat. § 09.17.020 ...........................................................................2

Ark. Code § 16-55-208 ..............................................................................2

Colo. Rev. Stat. § 13-21-102 .....................................................................2

Fla. Stat. § 768.73 .....................................................................................2

Idaho Code § 6-1604 .................................................................................2

Ill. Comp. Stat. 5/2-1115.05 ......................................................................2

Ind. Code § 34-51-3-4............................................................................2, 11

Mo. Stat. § 510.265 ...................................................................................2

N.C. Gen. Stat. § 1D-10 .......................................................................7, 13

N.C. Gen. Stat. § 1D-15 ....................................................................7, 8, 13

N.C. Gen. Stat. § 1D-25 .....................................................................7, 8, 9

N.C. Gen. Stat. § 75-1.1 ....................................................3, 4, 5, 6, 14, 15, 16

N.C. Gen. Stat. § 75-16 ..............................................................................5

N.D. Cent. Code § 32-03.2-11 ...................................................................2

N.J. Stat. § 2A:15-5.14...............................................................................2

iii

Nev. Rev. Stat. § 42.005 ..................................................................2

Ohio Rev. Code § 2315.21 ...........................................................2, 12

S.C. Code § 15-32-530 ....................................................................2

Tenn. Code § 29-39-104 ..................................................................2

Tex. Civ. Prac. & Rem. Code § 41.008 ..........................................2

W. Va. Code § 55-7-29 ....................................................................2

Wis. Stat. § 895.043 .........................................................................2

**OTHER AUTHORITIES**

Fed. R. App. P. 40 ...................................................................6, 7, 14

Cir. R. 40 ..................................................................................2, 3, 4

## <u>INTRODUCTION AND STATEMENT OF PURPOSE</u>

The Panel Opinion in *CPI Security Systems, Inc. v. Vivint Smart Home, Inc.*, warrants panel rehearing or, in the alternative, rehearing en banc, because it contravenes North Carolina law on two questions of exceptional importance.

*First*, the Panel Opinion announces a new and unsupported rule that authorizes a loophole for evading the limits of North Carolina's duly enacted statutory punitive damages cap. While North Carolina caps punitive damages for eligible claims at three times the amount of compensatory damages, the Panel declined to remit a punitive damages award nearly ***ten times*** the amount of the compensatory damages awarded on the state common law claims eligible for punitive damages. Until this case, no court had held that the calculation of the punitive damages cap under the North Carolina statute includes compensatory damages awarded for claims that do not authorize punitive damages. Rather, numerous courts have applied the cap to avoid circumventing it in this way. In broadly interpreting "compensatory damages" in the context of a statute that relates only to claims eligible for punitive damages, the Panel ran afoul of the "well-established principle that words used in one place in a statute have the same meaning in every other place in the statute." *Matter of L.L.*, 909 S.E.2d 151, 158 (N.C. 2024) (internal quotation omitted).

1

Here, the jury awarded Plaintiff-Appellee CPI Security Systems, Inc. $15 million on claims eligible for punitive damages, but the Panel included in the cap calculation $34.7 million awarded for two claims that expressly ***prohibit*** punitive damages. By doing so, the Panel Opinion allows CPI to collect an additional ***$95 million*** in punitive damages that North Carolina law does not authorize.

The Panel Opinion radically departs from both the statute's text and purpose and the manner in which courts in this Circuit have applied the cap for more than two decades, all of which the Panel overlooked as a legal matter. Cir. R. 40(b)(i). And the Panel Opinion is an outlier among courts that have addressed this same question in interpreting nearly identical statutes,[1] which have rejected the Panel's approach to avoid improperly awarding punitive damages for claims that do not authorize them.

The Panel Opinion thwarts the will of the North Carolina legislature and compels absurd consequences. In practice, parties bringing identical punitive

---

[1]  Eighteen other states have adopted similar statutes capping punitive damages as a ratio to compensatory damages. Ala. Code § 6-11-21; Alaska Stat. § 09.17.020; Ark. Code § 16-55-208; Colo. Rev. Stat. § 13-21-102;  Fla. Stat. § 768.73; Idaho Code § 6-1604; 735 Ill. Comp. Stat. 5/2-1115.05; Ind. Code § 34-51-3-4; Mo. Stat. § 510.265; Nev. Rev. Stat. § 42.005; N.J. Stat. § 2A:15-5.14; N.D. Cent. Code § 32-03.2-11; Ohio Rev. Code § 2315.21; S.C. Code § 15-32-530; Tenn. Code § 29-39-104; Tex. Civ. Prac. & Rem. Code § 41.008; W. Va. Code § 55-7-29; Wis. Stat. § 895.043.

damages claims now may be awarded wildly different judgments based entirely on whether valuable non-punitive damages claims accompanied them.

*Second*, the Panel Opinion contravenes authority from the North Carolina Court of Appeals—and ignores this Court's own precedent for when the Court may decide an issue differently than a North Carolina appellate court—in holding that a misrepresentation-based claim under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA") does not require first-party reliance. The Panel's determination that CPI need not prove first-party reliance for its misrepresentation-based UDTPA claim conflicts with decision of the North Carolina Court of Appeals in *D C Custom Freight LLC v. Tammy A. Ross & Associates, Inc.*, 848 S.E.2d 552, 560–63 (N.C. Ct. App. 2020). That case explains that UDTPA claims based on lies a defendant told to a plaintiff's potential **customers** are "preclud[ed]" by the North Carolina Supreme Court's holding in *Bumpers v. Community Bank of Northern Virginia*, 747 S.E.2d 220, 226 (N.C. 2013). *D C Custom Freight*, 848 S.E.2d at 563. Rather, "only the direct reliance of the plaintiff is sufficient to support a UDTP[A] claim based on misrepresentation." *Id.* The Panel Opinion not only misapprehends this law, but also fails to follow this Court's precedent requiring a Panel to follow the decision of the North Carolina intermediate appellate court absent persuasive data that the North Carolina Supreme Court would decide differently, warranting rehearing. Cir. R. 40(b)(iii). The Panel

Opinion identifies no persuasive data to support its rejection of the Court of Appeals decision in *D C Custom Freight*, relying instead on cases that pre-date *Bumpers* and that do not address the first-party reliance rule.

If left unchanged, the Panel Opinion will have far-reaching effects—covering **every case** in this Circuit applying North Carolina's punitive damages cap or adjudicating a claim under North Carolina's UDTPA. Because North Carolina has no mechanism to certify questions of state law to its Supreme Court, *Town of Nags Head v. Toloczko*, 728 F.3d 391, 398 (4th Cir. 2013), the Panel's Opinion will be the primary authority governing these questions for the near future, raising a question of exceptional importance. Cir. R. 40(b)(iv). Vivint requests that the Panel grant panel rehearing or, alternatively, that the Court grant rehearing en banc.

## FACTUAL STATEMENT

1.  The jury trial underlying this appeal concerned claims by CPI against Vivint for violation of the Lanham Act, unfair competition, violation of North Carolina's UDTPA, and tortious interference with contract. JA49-58. North Carolina law authorizes punitive damages on the claims for tortious interference and unfair competition but neither a Lanham Act nor UDTPA claim is eligible for punitive damages.

4

2.     The jury found for CPI on each claim, awarding $5.4 million for Lanham Act violations, $13.5 million for unfair competition, $29.3 million for UDPTA violations, and $1.5 million for tortious interference. JA3655-3659. The jury also awarded $140 million in punitive damages. *Id.*

3.     The district court denied Vivint's post-trial motion for judgment as a matter of law on the UDTPA claim based on Vivint's argument that CPI failed to prove first-party reliance for its UDTPA predicate claims. JA3860-3861. The district court also declined to reduce the punitive damages award, holding that the court could include compensatory damages awarded for the Lanham Act and UDTPA claims in determining the cap, even though neither statute permits an award of punitive damages. JA3855-3858. Including the $29.3 million in UDPTA damages in the cap calculation permitted CPI to recover quadruple damages on its UDTPA claim even though the UDTPA only authorizes a plaintiff to recover treble damages for a violation, N.C. Gen. Stat. § 75-16, and even though North Carolina law requires a party to "elect, prior to judgment, between punitive damages and any other remedy pursuant to another statute that provides for multiple damages," N.C. Gen. Stat. § 1D-20.

4.     On appeal, the Panel affirmed. It held inapplicable North Carolina's first-party reliance rule for UDTPA claims, deeming the North Carolina Supreme Court and intermediate appellate court decisions on this issue "inapposite." Op.

12-13.   As to punitive damages, the Panel held that compensatory damages awarded for claims that do not authorize punitive damages can be included when calculating the maximum punitive damages award under North Carolina's cap. Op. 23.   The Panel reasoned that its interpretation did not violate any prohibition on awarding punitive damages for claims that do not authorize them because, although the court "did indeed focus on all compensatory damages awarded in the action" to calculate the maximum punitive judgment, it did not expressly "*award* punitive damages on the Lanham Act and UDTPA claims." Op. 24.

## ARGUMENT

I.   **PANEL REHEARING OR REHEARING EN BANC IS WARRANTED AS TO THE PANEL'S UNPRECEDENTED INTERPRETATION OF NORTH CAROLINA'S PUNITIVE DAMAGES CAP**

In wrongly concluding that the calculation of North Carolina's punitive damages cap could include all compensatory damages awarded—including those awarded on claims that do not authorize punitive damages—the Panel misapprehended the plain language of the statute, authority rejecting this approach, and North Carolina law.   The Panel should grant rehearing to correct this error. Fed. R. App. P. 40(b)(1).   In the alternative, because the Panel Opinion announces a rule that will affect every case in this Circuit involving a claim for punitive damages under North Carolina law, the Court should grant rehearing en banc on this question of exceptional importance.   Fed. R. App. P. 40(b)(2)(D).

6

*First*, the Panel's analysis overlooks the plain language of the North Carolina statute. Section 1D-10 states that the statute governs "every claim for punitive damages"—and no other cause of action. N.C. Gen. Stat. § 1D-10. The statute then provides that "[p]unitive damages may be awarded only if the claimant proves that the defendant is ***liable for compensatory damages*** and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded." N.C. Gen. Stat. § 1D-15(a) (emphasis added). For such claims, "[p]unitive damages awarded against a defendant shall not exceed ***three times the amount of compensatory damages***." N.C. Gen. Stat. § 1D-25(b) (emphasis added).

In concluding that "compensatory damages" refers to ***all*** damages awarded in an action—whether or not those damages arose from a claim that authorizes punitive damages, Op. 23-24—the Panel overlooks this plain language. The "compensatory damages" referenced in Section 1D-15 refers only to "compensatory damages" for "every claim for punitive damages," N.C. Gen. Stat. § 1D-10, because those are the only claims to which the chapter applies, *id.* § 1D-10. Absent this qualifier, a plaintiff could obtain punitive damages so long as the factfinder awarded any compensatory damages on ***any*** claim—whether or not a claim eligible for punitive damages award—because the statute only specifies that "[p]unitive damages may be awarded only if the claimant proves that the defendant

*is liable for compensatory damages* . . . ." *Id.* § 1D-15(a) (emphasis added). Neither the district court nor the Panel questioned that the jury had to find Vivint "liable for compensatory damages" for the claims for which North Carolina authorizes punitive damages in order to award punitive damages. JA1876 (instruction to jury that it could award punitive damages only if it found Vivint liable on tortious interference and unfair competition claims); Op. 24.

The "well-established principle that words used in one place in a statute have the same meaning in every other place in the statute," means that the phrase "compensatory damages" must be construed the same way throughout Chapter 1D. *Matter of L.L.*, 909 S.E.2d at 158 (internal quotation omitted). As a result, the reference in Section 1D-25 to "compensatory damages" for purposes of the cap also must refer to compensatory damages for claims eligible for punitive damages. The Panel's conclusion that it is "irrelevant when applying the cap whether some of the compensatory damages were awarded for claims that are not themselves eligible for punitive damages" Op. 23, thus contravenes the plain text of the statute. The statute's text and structure make clear that the "compensatory damages" referenced in ensuring that "punitive damages awarded against a defendant *shall not exceed three times the amount of compensatory damages*," N.C. Gen. Stat. § 1D-25(b) (emphasis added), are those compensatory damages awarded on the claims eligible for punitive damages. As the Panel acknowledged,

8

the district court "did indeed focus on all compensatory damages awarded in the action," Op. 24, thus confirming that the judgment here runs afoul of the plain language of North Carolina's punitive damages cap.

*Second*, the loophole the Panel Opinion creates cannot be squared with the purpose of the North Carolina law and "prior and existing law." *Rhyne v. K-Mart Corp.*, 594 S.E.2d 1, 20–21 (N.C. 2004) (*Rhyne II*). On its face, the statute is designed to limit the size of punitive damages awards. It was authored with the presumptive knowledge that plaintiffs ***cannot*** recover punitive damages on all civil claims, only certain actions authorized by law. *E.g., Newton v. Standard Fire Ins. Co.*, 229 S.E.2d 297, 301 (N.C. 1976) (noting law does not authorize punitive damages for simple breach of contract). Nothing indicates that North Carolina's legislature sought to "expand the statutory cap" in a manner that would "violate the established principle that punitive damages are not available" for certain claims. *See Freudeman v. Landing of Canton*, 702 F.3d 318, 333 (6th Cir. 2012) (holding compensatory damages awarded for non-punitive damages claims cannot be combined with compensatory damages awarded for punitive damages claims when determining Ohio's statutory cap).

Not only is the Panel's reasoning that the "statute does not distinguish between" punitive damages claims and non-punitive damages claims, Op. 23-24, contrary to the plain language, it also cannot be reconciled with the legislative

intent to **_limit_** punitive damages. An interpretation that limits total punitive damages to three times the compensatory damages related to and arising from punitive damages claims better "adheres to the intent of the legislature" and is far more consistent with existing North Carolina law. *Rhyne v. K-Mart Corp.*, 562 S.E.2d 82, 92 (N.C. Ct. App. 2002), *aff'd*, 358 N.C. 160, 594 S.E.2d 1 (2004). (*Rhyne I*) ("To ascertain legislative intent with regard to the cap, we presume that the legislature acted with full knowledge of prior and existing law and its construction by the courts.").

*Third*, the Panel Opinion contravenes the manner in which courts in this Circuit have applied Section 1D-25 for decades. *E.g., X-It Prods., LLC v. Walter Kidde Portable Equip., Inc.*, 227 F. Supp. 2d 494, 535-38 (E.D. Va. 2002) (calculating North Carolina cap post-trial based on only compensatory damages awarded on claims eligible for punitive damages). The district court in *X-It Prods.*, for example, did not calculate the punitive damages cap by trebling all compensatory damages awarded. 227 F. Supp. 2d at 535-38. Instead, it determined the punitive damages cap based only on the damages awarded for each punitive damages claim. *Id.* The court in *SouthWood v. CCDN, LLC* adopted the same approach—producing a chart that left blank any award for punitive damages on the UDTPA claims. 2016 WL 1389596, at *5 n.16 (E.D.N.C. Apr. 7, 2016).

These decisions are persuasive data demonstrating how the statute has been long understood and applied until this case.

The only case the Panel Opinion cites, *Rhyne I*, did not apply the cap as the Panel did. The Panel latches onto language that "[a]ll compensatory damages . . . must . . . be totaled to one number" (Op. 23), but in *Rhyne I* the plaintiffs only brought common law tort claims—***all*** eligible for punitive damages—for which the jury awarded a ***single*** compensatory damages award to each plaintiff that the plaintiffs sought to multiply by the number of claims to inflate the cap. 562 S.E.2d at 86. The court referred to "one number" or a "single award" to explain the statute did not "allow duplicate credit for one compensatory award" or permit a separate award of punitive damages for each punitive damages claim. *Id.* at 92-93. It did not hold—or interpret "compensatory damages" to mean—that damages awarded as to claims not eligible for punitive damages could be used to inflate the cap. *Id.*

*Fourth*, in reading North Carolina's statute aimed at limiting punitive damages in a manner that ***expands*** them, the Opinion departs from the common sense interpretation of the cap. Other courts presented with this question have interpreted similar statutory language in the common-sense manner consistent with legislative intent. *E.g.*, *Freudeman*, 702 F.3d at 333; *Techna-Fit, Inc. v. Fluid*

*Transfer Prods., Inc.*, 45 N.E.3d 399, 415 (Ind. Ct. App. 2015); *Roginski v. Shelly Co.*, 31 N.E.3d 724, 739–40 (Ohio Com. Pl.).

Take Indiana's statute, which states that "[a] punitive damage award may not be more than . . . (1) three (3) times the amount of compensatory damages awarded in the action." Ind. Code Ann. § 34-51-3-4. In *Techna-Fit* (cited at Vivint Reply Br. 21-22), the Indiana Court of Appeal rejected the argument that calculation of the statutory cap "should be based upon the aggregate amount of compensatory damages awarded on both the breach of contract [claim]," which did not authorize punitive damages, "and breach of fiduciary duty claims," which did. 45 N.E.3d 399 at 415. The court instead held that, because plaintiff was "only entitled to punitive damages for breach of fiduciary duty, it follows that only those compensatory damages which are the predicate for the punitive damages claim can be used to calculate the statutory cap." *Id.* Otherwise the punitive damages award "would be based in part on claims for which [plaintiff] did not seek punitive damages, contrary" to the law that "punitive damages must arise from the underlying claim for which those damages are sought." *Id.*

Ohio's statute has similar language. It provides that, "in a tort action," the court "shall not enter judgment for punitive or exemplary damages in excess of two times the amount of compensatory damages awarded to the plaintiff for that defendant." Ohio Rev. Code § 2315.21. The *Roginski* court held that, in the

context of the statute, the term "compensatory damages" applied to an "amount awarded that arises only out of a claim that qualifies as a 'tort action'" and rejected an effort to include non-tort damages in the cap's calculation. 31 N.E.3d at 739-40 (cited at Vivint Reply Br. 22).

A similar contextual analysis of North Carolina's statute requires a similar result. The statute governs "claim[s] for punitive damages" and requires that punitive damages be "related" to the "compensatory damages" awarded for the underlying claim authorizing them. N.C. Gen. Stat. §§ 1D-10, 1D-15. The Panel overlooked both *Techna-Fit* and *Roginski*, even though they grappled with the same issue by analyzing substantially similar statutory language.

*Finally*, the Panel's interpretation invites "absurd or bizarre consequences" contrary to the purposes of the statute. *Rhyne II*, 594 S.E.2d at 22. For example, suppose two juries each award $10,000 on a trespass claim and $3 million in punitive damages. But, in one case, the jury also awards $1 million on a breach of contract claim. Applying the Panel's interpretation of the cap, a court would reduce the punitive damages award in the case without the contract claim to $250,000, while leaving the award in the contract claim case untouched even though breach of contract claims are not eligible for punitive damages and even though the compensatory damages are the same for the only claim eligible for

13

punitive damages. The North Carolina legislature cannot have intended such a result.

## II. PANEL REHEARING OR REHEARING EN BANC SHOULD BE GRANTED BECAUSE THE PANEL'S UDTPA HOLDING IS CONTRARY TO BOTH NORTH CAROLINA AND CIRCUIT LAW

Separately, rehearing should be granted because the Panel Opinion directly contradicts the North Carolina Court of Appeal's statement that "only the direct reliance of the plaintiff is sufficient to support a UDTP[A] claim based on misrepresentation" and that North Carolina law "precludes" any UDTPA claim in which a plaintiff is harmed when a third party relies on a defendant's misrepresentations. *D C Custom Freight*, 848 S.E.2d at 563. The Panel Opinion misapprehends the first-party reliance requirement, Fed. R. App. P. 40(b)(1), and conflicts with the law of this Court by foregoing the persuasive data needed to depart from North Carolina appellate authority on this issue of exceptional importance, Fed. R. App. P. 40(b)(2)(A), (D).

In reaching this erroneous result, the Panel Opinion mistakenly drew a distinction between UDTPA claims "premised on the defendant's having made deceptive statements to the plaintiff" and those based on "a business's telling damaging lies about one of its rivals to lure away its customers." Op. 11-12. It held that first-party reliance is required to establish causation for the former but not the latter. Op. 13.

14

But in *D C Custom Freight*, the North Carolina Court of Appeals rejected this very distinction. It explained that the "holding in *Bumpers* precludes a UDTP[A] claim such as that in *Ellis* [*v. Smith-Broadhurst, Inc.*, 268 S.E.2d 271, 272 (N.C. Ct. App. 1980)], in which a third party's reliance caused damage to the plaintiff." *D C Custom Freight*, 848 S.E.2d at 563. *Ellis* involved the exact fact pattern the Panel held immune from the first-party reliance rule: an insurance agent lied about his competitor's rates to a prospective customer in order to lure away his business. *Ellis*, 268 S.E.2d at 272. The *Ellis* court reversed summary judgment, holding the customer's reliance on the misrepresentation could have caused plaintiff's harm. *Id.* at 274. But *D C Custom Freight* noted that holding was "***directly in conflict with Bumpers***." 848 S.E.2d at 563 (emphasis added). Under *Bumpers*' "unequivocal . . . language," a plaintiff "cannot base a theory of causation on the reliance of another party" for a UDTPA claim. *Id.*

Although *D C Custom Freight* also noted that *Ellis* was factually distinguishable, the North Carolina court rejected the argument—adopted by this Panel (Op. 12)—that *Bumpers* applied only to traditional cases in which the defendant defrauded the plaintiff. 848 S.E.2d at 563-64. Under North Carolina law, the first-party reliance requirement turns only on whether the alleged injury "stem[s] from an alleged misrepresentation," no matter how pleaded, *Bumpers*, 747 S.E.2d at 226-27 (rejecting attempt to cast misrepresentation claim as one for

"overcharging"), and no matter where the misrepresentation was directed, *D C Custom Freight*, 848 S.E.2d at 563. The Panel Opinion cannot be squared with *D C Custom Freight*'s description of this reliance rule for UDTPA claims.

While the Panel Opinion relies only on authority that **pre-dates** *Bumpers* (Op. 10-13), North Carolina courts have recognized that the North Carolina Supreme Court's decision in *Bumpers* represented a change in the law. For example, post-*Bumpers*, the North Carolina Pattern Instructions for UDTPA "Proximate Cause" were amended to state that "[a] claim for an unfair or deceptive trade practice stemming from an alleged misrepresentation **requires a plaintiff to demonstrate reliance on the misrepresentation** in order to show the necessary proximate cause." N.C.P.I - Civil 813.70 (emphasis added). This broad instruction, citing *Bumpers*, contradicts the Panel Opinion's dismissive treatment of North Carolina appellate authority as "inapposite." Op. 12.

In fact, in summarily dismissing such authority, the Panel Opinion conflicts with the law of this Court. As a federal court applying North Carolina law on an issue that the North Carolina Supreme Court has not addressed directly, the Panel was required to "predict how that court would rule if presented with the issue." *Priv. Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002). Decisions from the North Carolina Court of Appeals "constitute the next best indicia of what state law is," *id.*, and are "not to be disregarded by a

federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise," *United States v. Little*, 52 F.3d 495, 498 (4th Cir. 1995) (internal quotation omitted). The Panel Opinion disregards *D C Custom Freight* with little explanation. Op. 12. It does not acknowledge that the Court of Appeals' analysis directly contradicts its holding. Nor does it explain why—let alone offer persuasive data showing that—the North Carolina Supreme Court would reject *D C Custom Freight*'s application of *Bumpers* to third-party misrepresentation claims.

This Court is obligated to follow the North Carolina Court of Appeals absent persuasive data indicating otherwise. *Little*, 52 F.3d at 498. By failing to justify its departure from *D C Custom Freight*, the Panel Opinion conflicts with the authority of this Court, warranting en banc review.

## CONCLUSION

Rehearing, or rehearing en banc, should be granted.

Dated: August 5, 2025             Respectfully submitted,

                                                  s/ Ellyde R. Thompson
                                                  Rachel Epstein
                                                  Ellyde R. Thompson
                                                  Daily Guerrero Chen
                                                  QUINN EMANUEL URQUHART
                                                    & SULLIVAN, LLP
                                                  295 5th Avenue, 9th Floor
                                                  New York, NY 10016
                                                  (212) 849-7100

Alex Bergjans
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
(213) 443-3000

*Counsel for Defendants-Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 40(d)(3), the foregoing opening brief is in 14-point, proportionally spaced Times New Roman type and contains 3,882 words.


Dated:  August 5, 2025          <u>s/ Ellyde R. Thompson</u>
                                Ellyde R. Thompson

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Petition for Rehearing Or, In The Alternative, Rehearing En Banc, with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:  August 5, 2025          s/ Ellyde R. Thompson_____
                                Ellyde R. Thompson